CHARLOTTE A. CAMPBELL v. C. J. SARGENT.[1]

June 10, 1932.

No. 28,853.

[1]Reported in 243 N. W. 142.

*Thomas Mohn, Horace W. Mohn,* and *Arnold F. Vogel,* for appellant.

*Sasse, French & Dunnette* and *Milton I. Holst,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying his alternative motion for judgment non obstante or a new trial.

Defendant was driving his automobile southerly on paved trunk highway No. 40 between Blooming Prairie and Austin. His wife was with him. The road was level and straight. It was nighttime.

He met a car with dazzling lights. Defendant turned on his dimmers or courtesy lights. This may have retarded his ability to see objects on the road ahead of him, since this light would not throw its rays as far ahead as the regular lamps. Just as the car passed, defendant discovered in front of him two boys on bicycles who were also traveling south. They were then about 30 feet ahead of him. He says he was going about 40 to 45 miles per hour. This would mean from 58 to 66 feet per second. Plaintiff claims he was going faster. One of the boys, Charles Christianson, was near the west edge of the pavement. The other boy, Robert Campbell, 15½ years old, was near the center of the pavement. Defendant's car struck Campbell, who was on his bicycle, inflicting fatal injuries. In an effort to avoid the collision, defendant swung his car to the east, then to the west, and then to the east, and at a point about 300 feet from where the collision occurred the car collided with another oncoming automobile operated by Miss Ruth Ward, with whom were four other young ladies, causing injury and damage. Defendant's car then turned over, to the injury of Mrs. Sargent.

■ The record discloses facts and circumstances relative to speed, control of the car, and a failure sooner to discover the presence of the boys, which makes the question of defendant's negligence for the jury. We do not go into the details. Nor do we say that negligence may not exist on other grounds.

■ Every bicycle upon a highway within this state shall be equipped with a lighted lamp on the front thereof visible under normal atmospheric conditions from a distance of at least 300 feet in front of such bicycle, and shall also be equipped with a reflex mirror or lamp on the rear exhibiting a yellow or red light visible under like conditions from a distance of at least 200 feet to the rear of such bicycle. 1 Mason, 1927, § 2720-48(f).

Decedent did not have the required lighted lamp on the front of his bicycle. There is testimony that he had the required reflex mirror on the rear, that the bicycle, after the accident, showed that it had been freshly broken off and pieces were found on the ground. On the other hand, defendant and his wife, as well as an-

other witness who drove his car within 200 feet from the rear a few minutes prior to the accident, all say that they did not see any such reflector on the rear of the bicycle. This made the question of whether the bicycle carried such reflector at the time of the accident a question for the jury. The defendant requested the court by his request No. 12 to charge the jury as follows:

"You are instructed that if you find that Robert D. Campbell did not have his bicycle equipped with a reflex mirror or lamp on the rear, exhibiting a yellow or red light, visible under like conditions [under normal atmospheric conditions] from a distance of at least 200 feet to the rear of his bicycle, then this boy was violating the law of this state and if you find that such violation contributed to his injury or death, there can be no recovery and your verdict must be for the defendant."

Instead of charging the jury as so requested, the court modified the request and charged that if decedent violated the statute it was a circumstance for the consideration of the jury in reference to the question of contributory negligence. This was error. Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605. If the jury should conclude that this statute as to the reflector was violated the boy would be guilty of negligence as a matter of law, and the jury would then be required to determine whether such negligence proximately contributed to the accident.

The statute requiring a lamp on the front of a bicycle means that it must be of such character that it is visible to one 300 feet in front thereof. Yet such laws are for the benefit of all persons using the highways. Whether such a light so required would upon a paved highway throw such rays of light as to be visible to one approaching the bicycle from the rear we do not know. There is no evidence in the case in reference thereto. If upon another trial evidence should be introduced tending to show that the rays of such a lamp would be clearly visible to one so approaching from the rear, then and in that event a charge in substance as indicated should also be given in reference thereto.

■ The car operated by Miss Ruth Ward was damaged by the collision with it as hereinbefore mentioned. Each of the occupants thereof was also injured to some extent. Upon the trial plaintiff presented the deposition of Miss Ward, and it was read by Mr. Sasse, one of plaintiff's counsel. Error is now assigned arising out of the fact that four consecutive questions in the deposition were read, though objections to each of them were properly sustained. They were as follows:

Q. "State whether or not Mr. Sargent paid for the car." [Ward car.]

Q. "State whether or not Mr. Sargent has paid all of you girls for the damages you suffered at that time.

Q. "How soon after this accident did he make the payments?

Q. "Whether within a week or a few days?"

Plaintiff's counsel argued in this court that defendant's counsel sat in the trial court with a copy of the deposition and knew what questions were coming and in no way protested in advance of the questions being asked. The record does not disclose this conduct on the part of defendant's counsel; but, assuming that he did so conduct himself, he was objecting to each question asked and the objections were being sustained. Obviously he could not assume that plaintiff's counsel would persist in asking these questions. They had no place in the case. It would be an injustice to the able and experienced counsel to suggest that he did not know such evidence was inadmissible. Asking questions of this character repeatedly, knowing that the ruling of the court was against him, was misconduct.

■ When Mr. Sasse was addressing the jury on behalf of the plaintiff he made this statement:

"They say it is all right to kill this boy because he is guilty of contributory negligence and they are licensed to do that."

Defendant's counsel excepted to this statement and asked the court to instruct the jury in reference thereto, and thereupon the court said:

298

"I think the statement 'they were licensed to do that' is improper."

And Mr. Sasse said:

"I will withdraw that. That was going farther than the evidence and the law will warrant."

And the court said:

"That statement is withdrawn. Objection noted."

But the record still carried the statement: "They say it is all right to kill this boy because he is guilty of contributory negligence." Mr. Sasse did not retract that statement, nor did the court instruct the jury to disregard it. It was an unfair and unjustifiable statement. No such claim is made by invoking the doctrine of contributory negligence, which means that a recovery cannot be had because the injured party is partly to blame. It does not mean that killing of one guilty of contributory negligence is "all right," nor is there anything in the record to indicate that defendant or counsel ever claimed or thought that such a thing was "all right." By making such a statement counsel was putting the law in a false light before the jury and in such a way as to bring it in disrepute. If his statement was believed, and it may have been, it did a rank injustice to defendant and his counsel, to whom he presumably referred by "they." Counsel was guilty of misconduct. Romann v. Bender, 184 Minn. 586, 239 N. W. 596; Burmeister v. Minneapolis St. Ry. Co. 185 Minn. 167, 240 N. W. 359.

■ Over the objection of the defendant plaintiff was permitted to prove by Miss Ward that all occupants of her car were injured. She testified that she herself had a fractured nose, a cut above the eye, and that her legs were bruised; that Miss Anderson had two ribs broken and a few bruises; that Miss Ward's sister, who was asleep in the back seat at the time of the accident, was knocked unconscious and did not regain consciousness for 24 hours; that Lila Thurston was cut about her face and on her leg; that Mary Coggins was cut on her right hand and her ankle was hurt. The only object of going into these personal injuries of the individuals in the Ward car was to show force resulting from speed. This perhaps could

have been otherwise adequately shown. It is always permissible to show the battered condition of the car struck as bearing upon the speed of the offending car. It is also permissible to show the extent, if any, to which the car struck was moved by the impact. It might be shown that occupants were thrown out of the car. It does not however require great speed for an automobile to cause serious injuries to a human being. We are of the opinion that evidence should not have been admitted detailing the physical injuries received by the various occupants of the Ward car. Such injuries are not a safe criterion as to speed, and if a description of the resulting injuries goes into the record it may easily become prejudicial. Nor would it be practicable for the parties to stop to litigate the question as to the character and extent of such injuries.

■ Charles Christianson was 13 years old. He did not see defendant's car until after it struck Robert Campbell. He had heard it. Over objection of no foundation showing qualification, he was permitted to testify that in his opinion defendant's car was going about 75 miles per hour at the time of the collision. There was little to show that anyone, even a mature person, under the circumstances, could safely form such an opinion. It was dark. Of course the car had lights. We do not know of any way by which one may determine the speed of a car by the noise. He does not disclose what he saw of the movements of the car after the collision. This testimony should not have been received. On the other hand, however, its reception standing alone could not be considered prejudicial, since the jury would necessarily know that the boy's estimate was, under such circumstances, a mere guess, made, as far as this record shows, without an opportunity to observe the speed so as to form a reasonably safe estimate thereof.

Since there must be a new trial, we do not discuss the very serious claim as to excessive damages.

The order refusing a new trial is reversed.