GEORGE GRUENHAGEN v. AUDREY BRELJE.

89 N. W. (2d) 738.

April 18, 1958—No. 37,186.

*Carroll, Thorson, Anderson & Cronan* and *Arnold W. Beneke,* for appellant.

*Lauerman & Johnson,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Plaintiff obtained a verdict of $25,083 for injuries sustained in an automobile accident which occurred shortly after 5 p. m. December 18, 1953, on Minnesota State Highway No. 7 a short distance west of Carver County Road No. 6.

This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial. Defendant

contends (1) that plaintiff was guilty of contributory negligence as a matter of law; (2) that defendant was free from negligence; (3) that the court erred in allowing plaintiff to answer the question, "when you saw this object ahead of you there when you were some 30 to 40 feet from it, did it appear to you whether it was moving or standing still?" and (4) that the court erred in denying defendant's motion for a mistrial because of the publication of a certain newspaper article while the trial was in progress.

At the time of the accident plaintiff was traveling westerly on Highway No. 7 in a 1952 Chevrolet two-ton, cab-over-engine truck at a speed of from 35 to 40 miles per hour. Shortly after passing an intersection formed with said highway by Carver County Road No. 6, he drove his truck into the rear of a 1944 flat-bottom, hoist-body Ford truck owned by defendant which was loaded with gravel and parked on the north side of Highway No. 7 facing westerly.

At the point of impact Highway No. 7 curves to the north at an angle of about 2 degrees so that as plaintiff's truck traveled around the curve his headlights were directed somewhat to the left of the point where defendant's truck was parked. It was "very dark" at the time, and the color of defendant's truck was somewhat the same color as the highway. Just prior to the collision, the lights of an oncoming car had dulled plaintiff's vision, and when plaintiff first discovered defendant's truck, it was some 30 to 40 feet in front of him. When he discovered it, he immediately applied his brakes, but it was then too late to avoid the collision.

It was further established that the force of the collision had fractured plaintiff's left leg; that it had caused it and his left foot to be caught within the brake and clutch of his truck; that it had thrown him into the corner of the truck cab and left him in a dazed condition; and that in consequence his truck had pushed defendant's truck a distance of some 1,000 feet before the vehicles could be brought to a stop on the highway.

The evidence further disclosed that, prior to the accident, defendant's front left headlight was out and his right headlight "very, very poor"; that his left rear clearance light was missing and that his right rear clearance light was out; and that his taillight had been unlighted. State

highway officers testified that there was a faint odor of alcohol coming from defendant; that he seemed hazy and not to realize what had happened; and that he could give no explanation as to why the lights of his truck had not been in operation.

Plaintiff testified that when he saw defendant immediately after the accident he asked him what he had been doing at the side of the road and defendant replied that he was "trying to fix my lights."

■ To support the contention that plaintiff was guilty of contributory negligence as a matter of law, defendant relies upon Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42, where an automobile driver was so held because of his failure to stop in sufficient time to avoid striking a truck stalled upon the highway within the range of his headlights. Subsequently, we held that the rule of the Orrvar case should be limited to the particular fact situation there presented. As stated in Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 160, 69 N. W. (2d) 104, 107:

"To adopt the 'range of vision' rule as a rigid formula to be applied regardless of the circumstances would be unnecessarily severe as well as impractical in many situations."

See, also, Shastid v. Shue, 247 Minn. 314, 77 N. W. (2d) 273; Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 64 N. W. (2d) 530; Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814.

■ The principles which seem applicable here are set forth in the Schubitzke case as follows (244 Minn. 160, 69 N. W. [2d] 107):

"* * * the determination in each case should be made on the basis of the underlying concept * * *: Did the driver adhere to the standard of care to be expected from a reasonably prudent person under similar circumstances? If, under the particular facts * * * the failure to drive within the range of vision does not conclusively constitute a deviation from the standard of care exercised by the ordinarily prudent person, then the driver's failure to operate the vehicle at such a speed should be submitted to the jury merely as evidence bearing on his negligence."

■ Keeping these rules in mind, we are of the opinion that there are facts and circumstances present in the instant case which made the issue of plaintiff's negligence one for the jury's determination. As

indicated above the night was "very dark." Plaintiff was proceeding around the curve so the beam of his headlight was directed to the left of defendant's stopped truck. The rear lights on the latter were not lighted and its color was somewhat the same as that of the highway. A car which had just passed plaintiff from the opposite direction had dulled his vision. From all such factors a jury might find reasonable justification for plaintiff's failure to see defendant's truck sooner or bring his truck to a stop before colliding with it.

Likewise, plaintiff's failure to bring his truck to a stop immediately after the accident can reasonably be explained. The head-on collision with defendant's loaded gravel truck impeded plaintiff's forward progress so forcibly that he was left in a dazed condition with his left leg fractured and his left foot and leg caught within the clutch and brake so as to make it difficult for him to extricate it to apply his brakes. In such a fact situation it seems obvious that the issue of contributory negligence was for the jury. Hardy v. Anderson, *supra;* Shastid v. Shue, *supra.*

■ Nor can there be any doubt that the evidence was amply sufficient to support a finding of negligence on the part of defendant. The jury could well determine therefrom that his actions in parking his truck loaded with gravel upon the side of the highway on a dark night without proper warning lights thereon constituted negligence proximately causing the accident. See, M. S. A. 169.13, subd. 3; 169.32; 169.50, subd. 1; 169.51; 169.53; 169.55.

■ Defendant contends that the court erred in permitting plaintiff to be questioned as follows:

"Q. Well, now, Mr. Gruenhagen, when you saw this object ahead of you there when you were some 30 to 40 feet from it, did it appear to you whether it was moving or standing still?

"Mr. Thorson: We object to this on the ground that no proper foundation has been laid, and as a conclusion of the witness.

"The Court: Overruled.

\* \* \* \* \*

"A. [Mr. Gruenhagen] It was standing still."

We feel there was no error in this procedure. Whether an object on a

highway is in motion or stationary involves a question of observation so elementary that any person with ordinary vision and the opportunity to observe would be readily qualified to answer it. Plaintiff had testified that, when he first saw what turned out to be defendant's truck, he was driving about 35 to 40 miles per hour and that the object was then some 30 to 40 feet in front of him. While he did not at first ascertain that the object was a truck, nevertheless it was within his range of vision so that he could ascertain whether it was moving or stationary. The observations of witnesses under similar circumstances have been frequently received as to questions of speed, position, direction, motion, and like matters. They fall within the category of subjects to which an ordinary layman as distinct from a specialist may testify. Campbell v. Sargent, 186 Minn. 293, 243 N. W. 142; Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27; 20 Am. Jur., Evidence, §§ 805, 806, 807, 808. The matter is one lying almost entirely within the discretion of the trial court. Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629. We do not find an abuse of such discretion here.

■ Defendant contends that the trial court erred in denying his motion for a mistrial because of a newspaper account of the trial published while the trial was in progress and in the city in which it was being conducted, setting forth the following in reference to defendant:

"He was later tagged by the highway patrolman for improper equipment."

Defendant's counsel advised the court of the article and moved for a mistrial because the jury "very probably had read this prejudicial report of wholly inadmissible evidence." The general rule applicable in situations of this kind is set forth in Annotation, 31 A. L. R. (2d) 420, as follows:

"* * * it must appear that the juror or jurors actually read the account or some part of it, and it will not suffice that there is a supposition that the jurors had done so. * * *

"* * * it may be assumed that in each case included in this annotation at least one of the jurors read a newspaper account which commented upon the trial * * *."

See, Eichten v. Central Minnesota Co-op. Power Assn. 224 Minn. 180,

28 N. W. (2d) 862; Ceylon Farmers Elev. Co. v. Fidelity & Deposit Co. 163 Minn. 280, 203 N. W. 985. But, even where there is evidence that a juror has read a news article claimed to be prejudicial, it is generally held that the disposition of the matter rests within the sound discretion of the trial court. Eichten v. Central Minnesota Co-op. Power Assn. *supra;* Annotation, 31 A. L. R. (2d) 421. Here, where there is nothing to indicate that any juror had read the challenged article or was otherwise aware of it, and where there is nothing to indicate that plaintiff had been instrumental in causing its publication, it must follow that the trial court did not abuse its discretion in denying defendant's motion for mistrial because of its publication.

Affirmed.