MERRILL J. CAMPEAU, BY ALBERT J. CAMPEAU, HIS FATHER AND NATURAL GUARDIAN, AND ANOTHER v. OWEN B. THOMAS.

131 N. W. (2d) 629.

December 4, 1964—No. 39,081.

*John H. Rheinberger* and *Neumeier, Rheinberger, Eckberg & Kimmel,* for appellants.

*Frank X. Cronan* and *Carroll, Cronan, Roth & Austin,* for respondent.

OTIS, JUSTICE.

This action is brought by plaintiff for derivative damages and for personal injuries sustained by his minor son while riding as a passenger in a vehicle owned by defendant, Owen B. Thomas, and driven by defendant's son, Richard. The jury returned a verdict in favor of defendant, and plaintiff appeals from an order denying judgment n. o. v. or a new trial.

On Saturday evening, March 14, 1959, defendant's son, then 17

years of age, picked up five of his teen-age friends, including Merrill Campeau, with a view to driving four of them to North St. Paul. At approximately 8 p. m., Richard proceeded out of Stillwater in a southwesterly direction on Highway No. 212, a two-lane roadway which was then in the process of reconstruction. He ascended a half-mile grade to a stretch of level highway approximately 100 feet long and then proceeded downgrade, curving to the west or to his right. The evidence indicates that about 300 feet from the crest of the hill a temporary roadway intersected from the left, forming a hairpin turn for those leaving the highway for Bayport as they drove out of Stillwater. It appears that a car owned and operated by one Rosalee Carufel was standing on the right half of the highway, also headed south and west, waiting to make a left turn onto the Bayport road. A line of cars coming from the opposite direction required her to wait several moments. As Richard descended the grade his speed did not exceed 40 or 45 miles an hour, which was within the posted limits. When he was some 8 car lengths or 120 feet from the Bayport turnoff, he first saw the Carufel automobile but did not realize it was in a stopped position until he was approximately 5 car lengths or 75 feet from the intersection. Since he was unable to stop, he attempted to pass on the left, but an oncoming vehicle obstructed his passage. To the left of the right-of-way was a gravel pit and on the right a gully. The front right portion of defendant's vehicle thereupon collided with the left rear of the Carufel automobile, precipitating the defendant's car into a ditch and causing the plaintiff's son the injuries for which damages are sought.

One of the key issues was whether or not Mrs. Carufel had used her turn signals to alert defendant's driver to the fact that she was either slowing or at a standstill. Although she testified her signals were operating, none of the passengers in the defendant's car observed them before the accident.

In this state of the record plaintiff asserts defendant's driver was negligent as a matter of law in the following respects: (1) Driving at a speed which was excessive considering the proximity of the intersection; (2) failing to see that Mrs. Carufel was in a stopped posi-

tion; (3) failing to slow down when he first saw the Carufel car; and (4) driving at a speed which prevented his stopping within the range of his headlights.

■ It is undisputed that as defendant's car came over the crest of the hill and descended toward the Bayport intersection it was driven at a speed which was well within the limits posted by the Highway Department. The applicable statute, Minn. St. 169.14, subd. 3, provides as follows:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

We cannot say as a matter of law that the speed of defendant's car was not appropriate as it approached the Bayport intersection. Clearly, this was a matter for the jury and not for the court to determine.[1]

■ We have recently observed that not every rear-end collision results from negligence on the part of the following car and that a failure properly to observe a preceding car is not always a proximate cause of collisions.[2] This is particularly true where the second vehicle has a right to assume that automatic signals will be given before the car makes a left turn.[3] Under the circumstances of the instant case, it was proper to submit to the jury the issue of whether defendant's driver should have realized sooner that Mrs. Carufel's car was at a standstill, as well as the question of whether he had a duty to reduce his speed more promptly after seeing her on the roadway.

■ Plaintiff cites as controlling with respect to defendant's negli-

---

[1]Conradson v. Vinkemeier, 235 Minn. 537, 542, 51 N. W. (2d) 651, 654; Godeen v. Bennett, 265 Minn. 179, 183, 120 N. W. (2d) 867, 870.
[2]Pluwak v. Lindberg, 268 Minn. 524, 532, 130 N. W. (2d) 134, 140.
[3]Teas v. Minneapolis St. Ry. Co. 244 Minn. 427, 434, 70 N. W. (2d) 358, 363.

gence Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42; Olson v. Hector Const. Co. Inc. 216 Minn. 432, 13 N. W. (2d) 35; and Wilson v. Sorge, 256 Minn. 125, 97 N. W. (2d) 477. The Wilson case is readily distinguishable in that the evidence there compelled a finding that the lead vehicle had signaled for a left turn for a distance of 150 feet before entering the intersection. The other two cases held that a vehicle must travel at a speed which permits it to stop within the visibility of its headlights, a doctrine all but repudiated in subsequent decisions.[4] The Olson case applied the Orrvar rule where the following vehicle was fully alerted to impending danger by a number of flares which gave obvious warning of road construction.

The extenuating circumstances which here created a jury question are similar to those we considered in Gruenhagen v. Brelje, 252 Minn. 203, 206, 89 N. W. (2d) 738, 741. In declining to hold as a matter of law that the driver of a vehicle was negligent in rear-ending a stalled truck, we there noted that the accident occurred at a curve where the following vehicle's headlights did not squarely illuminate the truck, and the lights of oncoming cars obscured the driver's vision. These factors, among others, were held sufficient to permit a jury to find that the driver was justified in failing to see the truck in time to avoid a collision. We reach the same conclusion in this case.

■ Plaintiff argues that the court in its charge unduly stressed the issue of whether or not Mrs. Carufel gave a proper signal for a left turn. The pertinent portions of the instructions are as follows:

"Another provision [of the statute] reads:

" 'A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signals herein required shall be given either by means of the hand, and arm, or by a signal lamp or signal device of a type approved by the Commissioner.'

"Now, you will recall that it is the claim of Mrs. Carufel that she did give a signal by use of the signal lamp or signal device on her car for a left-turn, and while that signal was not observed, apparently, by

---

[4]Lee v. Smith, 253 Minn. 401, 414, 92 N. W. (2d) 117, 127.

any of the occupants of the Thomas car, she nevertheless does make that claim that she did give the signal. It is for this jury to say whether or not the signal was in fact given under all the evidence before you; and in any event, there is no dispute that whatever signal device was on her car was of the type that was approved by the Commissioner so there is no issue concerning the type of signal device that her car was equipped with. *The real issue involved is whether or not she did or did not give the signal in question for a left turn.*" (Italics supplied.)

Plaintiff specifically complains that the last sentence may have led the jury to conclude that plaintiff's entire case hinged on this issue. We find no merit in this contention. Manifestly the court merely intended to explain to the jury that there was no issue with respect to whether or not the automatic turn signal was of a type approved by the commissioner.

Affirmed.