S.L.D., individually and as parent and natural guardian of three children, Respondents,

v.

Brian Wesley KRANZ, Defendant,

COUNTY OF BENTON, defendant and third-party plaintiff, Appellant,

v.

Laurie KRANZ, Third–Party Defendant.

No. C2–92–1835.

Court of Appeals of Minnesota.

March 30, 1993.

F. Dean Lawson, Minneapolis, for respondents.

Robert G. Haugen, Johnson & Lindberg, P.A., Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and DAVIES and AMUNDSON, JJ.

## OPINION

CRIPPEN, Judge.

Respondent S.L.D., on behalf of himself and his three daughters, sued appellant

Benton County for damages arising out of the sexual abuse of the children. Respondent claims Benton County was negligent in failing to conduct "a thorough and complete investigation" after he telephoned his concerns to the county social services agency, and in failing to notify the county sheriff as required by Minn.Stat. § 626.556. The trial court denied Benton County's summary judgment claim of immunity from suit. We affirm as modified by the determination that appellant is entitled to partial summary judgment.

## FACTS

In May 1987, respondent contacted the Benton County Social Services Agency to express concern about his three minor daughters. At that time, respondent was living in Oregon and his children lived with their mother and stepfather in Benton County. Respondent became alarmed after one of his daughters commented on difficulties with her stepfather, including verbal abuse, nudity in her mother's absence, and use of pornographic movies such that the children had seen them. After speaking with his daughter, respondent called an Oregon child protection office, which referred him to Benton County.

Respondent discussed his concerns with a social worker at the Benton County Social Services Agency. He requested that the agency intervene on his behalf because he lived in Oregon and could not investigate. He also expressed concern that the agency would not investigate aggressively because his ex-wife was employed by the agency and the stepfather was the Benton County Coordinator. The social worker assured him that the fact that the mother and stepfather were county employees would not affect the agency's decisions.

After speaking with respondent, the social worker consulted with his supervisor and a child abuse assessment worker, Barbara Schmidt. The three of them decided that the telephone call did not constitute a

report of neglect or abuse within the meaning of Minn.Stat. § 626.556. Schmidt later stated that the social worker had not provided her with complete information about the call, and that had she received complete information she would have determined the call did constitute a report of neglect. The social worker also sought an outside opinion from a Stearns County child abuse investigator, who agreed that the information did not warrant an assessment. It is unclear what information was relayed to the Stearns county investigator.

The social worker then informed respondent that the agency had decided not to conduct an assessment, and urged him to gather more information on his own. Several months later, when the girls visited their father in Oregon, they disclosed that their stepfather had been sexually abusing them since November 1986.

Respondent sued for damages and Benton County moved for summary judgment on the grounds that it was immune from suit under Minn.Stat. § 626.556 subd. 4(b) [1] and the common law doctrine of official immunity. The trial court denied the motion. On appeal, Benton County contends it has immunity for negligence attributable to conduct of its employees.

## ISSUE

Does vicarious official immunity bar a claim against the county for alleged negligent decisionmaking or the alleged negligent handling of information?

## ANALYSIS

■ Where a governmental unit claims immunity from suit, an order denying its motion for summary judgment is immediately appealable. *Reuter v. City of New Hope*, 449 N.W.2d 745, 749 (Minn.App. 1990), *pet. for rev. denied*.(Minn. Feb. 28, 1990). On appeal from summary judgment, this court will uphold the trial court unless there are disputed issues of material fact or unless the trial court misapplied the

---

1. Minn.Stat. § 626.556, subd. 4(b) provides: "A person who is a supervisor or social worker employed by a local welfare agency complying with subdivisions 10 and 11 or any related rule or provision of law is immune from any civil or criminal liability that might otherwise result from the person's actions, if the person is acting in good faith and exercising due care."

law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

### 1. *Background*

#### a. Official Immunity

The policy behind this immunity is to protect "public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Elwood v. County of Rice*, 423 N.W.2d 671, 678 (Minn.1988); *see also Nusbaum v. County of Blue Earth*, 422 N.W.2d 713, 718 n. 4 (Minn. 1988). Thus, where public officials are "charged by law with duties which call for the exercise of [their] judgment or discretion [they are] not personally liable to an individual for damages unless [they are] guilty of a willful or malicious wrong." *Elwood*, 423 N.W.2d at 677 (*quoting Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)).

Official immunity only shields government officials from liability stemming from the performance of duties that require the exercise of judgment or discretion; there is no immunity from liability for the performance of mere ministerial tasks. *Pletan v. Gaines*, 494 N.W.2d 38 (Minn. 1992); *Larson v. Independent Sch. Dist. No. 314*, 289 N.W.2d 112, 119 (Minn.1979). A duty is ministerial "when it is absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Elwood*, 423 N.W.2d at 677 (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). "The crucial focus is upon the nature of the act undertaken." *Larson*, 289 N.W.2d at 120. In deciding whether the act is ministerial the court must consider whether "the nature, quality, and complexity of [the] decision-making process" justifies granting the official immunity. *Id.; see also Williamson v. Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976).

It is sometimes difficult to categorize an act as discretionary or ministerial, *see Larson*, 289 N.W.2d at 120; *Papenhausen v. Schoen*, 268 N.W.2d 565, 571 (Minn.1978); however, the distinction serves the policy behind the official immunity doctrine. Imposing liability for discretionary acts would deter public officials from exercising their judgment when making the difficult decisions often necessary to effectuate the public policies mandated by law. On the other hand, imposing liability for ministerial acts merely encourages public officials to exercise care while performing duties that require little or no independent judgment.

#### b. Discretionary Governmental Immunity

This is a more limited immunity doctrine that shields the government from liability arising out of its policymaking and planning decisions. *Holmquist v. State*, 425 N.W.2d 230, 231 (Minn.1988); *Nusbaum*, 422 N.W.2d at 722. The public policy behind discretionary immunity is separation of powers. *Nusbaum*, 422 N.W.2d at 718. The political branches of government must balance competing political, economic and social considerations when they make public policy and planning decisions. *Id.* at 722. Discretionary immunity prevents tort actions from becoming a vehicle for judicial second-guessing of these executive and legislative policy-making decisions. *Holmquist*, 425 N.W.2d at 231; *Nusbaum*, 422 N.W.2d at 718.

Taken literally, discretionary governmental immunity would shield all government actions because "almost everything a government employee does * * * involves the exercise of some discretion." *Holmquist*, 425 N.W.2d at 231. Thus, the supreme court distinguished planning-level decisions from operational-level decisions. *Id.* at 232. Planning-level decisions are those that involve the balancing of competing policy objectives and they are protected by discretionary immunity. *Id.* Operational-level decisions are those "relating to the ordinary day-to-day operations of the government," including the exercise of scientific, technical, or professional judgment, and they are not protected by discretionary immunity. *Id.; Nusbaum*, 422 N.W.2d at 719–20.

Historically, official immunity sheltered government employees and discretionary

immunity protected the government unit itself. In some cases where an employee was found to be protected by official immunity, the claim against the governmental employer was dismissed without comment. *See, e.g., Johnson v. Morris,* 445 N.W.2d 563, 569 (Minn.App.1989), *aff'd in part, rev'd in part* 453 N.W.2d 31 (Minn.1990). But, in *Holmquist,* the supreme court noted that "not infrequently a governmental entity is required to compensate for the harm done by a public official even though the official is not held personally liable." 425 N.W.2d at 233 n. 1 (citation omitted). In *Pletan v. Gaines,* 494 N.W.2d 38 (Minn. 1992), the supreme court directly addressed the issue of when the government can vicariously enjoy its employees' official immunity.[2]

### c. Vicarious Official Immunity

In *Pletan,* a police officer engaged in a high-speed chase which resulted in the death of a boy who was struck by the fleeing suspect's car. *Id.* at 39. The boy's parents sued the police officer and the City of Crystal alleging, in part, that the officer was negligent for engaging in the chase. *Id.* The trial court originally granted the City summary judgment on the grounds of discretionary immunity, but this decision was reversed in *Pletan v. Gaines,* 460 N.W.2d 74 (Minn.App.1990), *pet. for rev. denied* (Minn. Nov. 1, 1990). On remand, the court again granted summary judgment, this time finding that the police officer enjoyed official immunity, and this court affirmed. *Pletan v. Gaines,* 481 N.W.2d 566 (Minn.App.1992), *aff'd* 494 N.W.2d 38 (Minn.1992). The supreme court agreed with both lower courts, holding that the police officer was protected by official immunity. *Pletan v. Gaines,* 494 N.W.2d 38, 43 (Minn.1992). The supreme court then addressed the question of whether the city vicariously enjoyed the official immunity of its police officer.

As a prelude, the supreme court noted that some jurisdictions hold that a municipality is covered by its employees' official immunity because "it would be anomalous to impose liability on a municipality for the very same acts for which its employee receives immunity." *Id.* at 42 (citations omitted). Other jurisdictions impose liability on the municipality, even where the employee is protected by official immunity, "on the grounds that a governmental entity can only take advantage of its own immunities." *Id.* (citations omitted); *see also* George A. Bermann, *Integrating Governmental and Officer Tort Liability,* 77 Colum.L.Rev. 1175 (1977).

■ The supreme court decided that in the final analysis it is a policy question in each case whether to extend official immunity to the employer. *Pletan,* 494 N.W.2d at 42. Addressing the facts of *Pletan,* the court concluded that if the municipality was not vicariously immune from liability, the court would have to scrutinize the actions of the police officer. *Id.* The purpose of official immunity is to avoid judicial scrutiny where public officials must exercise independent judgment. The threat of liability against the municipality could deter the police officer from exercising his independent judgment in deciding whether to pursue a suspect in the future. *Id.* Thus, the court held that where the threat of liability against the government would unduly influence government employees from exercising independent judgment in pursuit of legitimate public policy choices the government will vicariously enjoy its employees' official immunity.[3]

---

**2.** Respecting differences between our analysis and that of the trial court, we note that the trial court's decision (August 20, 1992) preceded issuance of the *Pletan* decision (December, 31, 1992).

**3.** The court recognized that an exception to vicarious official immunity could exist where there was evidence that the official engaged in reckless conduct with deliberate disregard for known public safety interests. *Pletan,* 494

N.W.2d at 43 ("This is not, of course, to condone poor judgment resulting in reckless, 'Dirty Harry'-style car chases.") The boundaries of such an exception have not been precisely defined. *Id.* ("[S]o many factors come into play in any car chase that to try and fashion a bright-line exception to vicarious official immunity in instances toward the lower end of the risk continuum would * * * create more problems than it solves.")

### 2. *Application*

Respondent sued Benton County alleging that it was negligent in failing to conduct an assessment and in failing to notify the sheriff after receiving his telephone call. *See* Minn.Stat. § 626.556.

### a. The Statutory Scheme of the Reporting of Maltreatment of Minors Act

Minn.Stat. § 626.556, subd. 10 (1986) states that the local welfare agency "shall immediately conduct an assessment" upon receipt of a report that alleges neglect of a child by a member of the family unit. Minn.Stat. § 626.556, subd. 3(a) mandates that the agency notify the local police department or county sheriff upon receipt of a report alleging child neglect. Minn.Stat. § 626.556, subd. 2(c) defines "neglect" in relevant part as

[the] failure by a person responsible for a child's care to * * * protect a child from conditions or actions which imminently and seriously endanger the child's physical or mental health when reasonably able to do so.

Once the county welfare agency receives communication constituting a report of neglect, it has no discretion. Under Minn. Stat. § 626.556, subds. 3(a) and 10, respectively, the agency must notify the sheriff and conduct an assessment. But, before it is required to conduct an assessment and notify the sheriff, the welfare agency must determine whether it has received a "report" within the meaning of the Act.

Minn.Stat. § 626.556, subd. 2(e) defines a "report" as "any report" received by a welfare or police agency "pursuant to this section." As stated in Minn.Stat. § 626.-556, subd. 1, the purpose of the Act "is to protect children whose health or welfare may be jeopardized through physical abuse, neglect or sexual abuse." Consequently, a report is received "pursuant to this section" only if it contains allegations that, if substantiated, would constitute neglect as defined by law. *See also* Minn.Stat. § 626.-556, subds. 10(a), 10a, 10b(a), and 10d(a) (assessment only mandated when report alleges neglect, physical abuse, or sexual abuse).

### b. Official and Vicarious Immunity for the Decisionmaking Activities of the Social Workers

■ As noted by the court below "[respondent's] claim here is that the [social service agency] erred in concluding that the information * * * relayed did not satisfy the Act's definitional criteria for * * * neglect." It is respondent's position that

[w]hether an allegation is or isn't a 're-port' doesn't depend on the opinion of an intake person. An allegation or report in and of itself, is or isn't a 'report' within the statutory definition * * *

Furthermore, respondent alleges that the testimony of Barbara Schmidt conclusively establishes that his telephone call constituted a report of neglect and therefore the county had no choice but to conduct an assessment.

There is no merit in respondent's interpretation of the nature of the county social workers' responsibilities in deciding whether or not to investigate an assertion of abuse. The task of deciding whether a particular allegation constitutes a report of neglect involves more than mere ministerial activity. The legislature did not, and indeed could not, articulate every conceivable fact pattern that would constitute neglect as defined in Minn.Stat. § 626.556, subd. 2(c). Therefore, social workers must exercise their professional judgment, based on training and experience, to determine whether a given set of allegations constitutes neglect and in particular whether the facts alleged "imminently and seriously endanger the child's physical or mental health." *Id.* The decisionmaking process here is sufficiently complex to justify granting social workers official immunity. Because the county social workers were performing discretionary duties, as opposed to mere ministerial duties, when they decided respondent's call did not constitute

We do not address such an exception here because there is no evidence of reckless disre-

gard for public safety interests in the record before us.

a report of neglect, they are protected by official immunity.[4]

 Does the social workers' official immunity in this situation inure to the benefit of the county itself under the doctrine of vicarious official immunity? Under *Pletan*, we must consider the facts surrounding the employees' duties to decide whether the county should vicariously enjoy its employees' immunities.

In passing the Act, the legislature had to consider competing policy objectives, including the need to protect children from abuse and neglect and the sometimes competing need to respect privacy in family relationships. *See generally R.S. v. State*, 459 N.W.2d 680 (Minn.1990). The legislature created a statutory scheme that balanced these competing aims and directed that assessments are required only when a report alleges neglect or abuse. The social worker in this scheme makes a decision that will lead to action or inaction, and may offend public policies to protect children and to spare their families from overzealous intervention. This decision must not be shaped by the fear that action or inaction is compelled by the threat of civil liability.

If the county is not immune from liability based on the decisions of its social workers in this situation the courts would have to scrutinize the decisionmaking of the social workers. Social workers "may justifiably think their own employment performance is being evaluated." *Pletan*, 494 N.W.2d at 42 (stated in reference to police officers). The threat of litigation against their employer and the attendant judicial scrutiny of their decisions could unduly pressure social workers into conducting assessments where there is no allegation of neglect or abuse or pressure them into not conducting assessments where there is an allegation of neglect or abuse. This result would defeat the public interest in good judgment under the abuse reporting law.

Under the analysis set forth in *Pletan*, Benton County is vicariously immune from suit based on the alleged negligent determination of the social workers that respondent's allegations did not constitute a report of neglect.[5]

**c. Official Immunity for the Ministerial Activities of the Social Workers**

Analysis of the case does not end with the determination that the county is immune from suit based on the alleged negligent decisionmaking of its employees. Respondent has produced evidence not only of the decision made by the employees but also of their actions leading to the decision.[6] After receiving respondent's tele-

4. This decision is supported by the statutory immunity given to social workers in Minn.Stat. § 626.556, subd. 4(b). Subdivision 4(b) grants immunity from civil and criminal liability to social workers and their supervisors who, in *good faith and exercising due care*, comply with subdivision 10 or any related rule or provision of law. Because an assessment under subdivision 10 is only mandated when the local welfare agency receives a report of neglect, physical abuse or sexual abuse, social workers are complying with subdivision 10 when they decide whether a particular report in fact alleges neglect or physical or sexual abuse. The social workers are therefore immune from suit for their decision. The same analysis applies for reporting to the county sheriff's department under subdivision 3(a).

5. Respondent has emphasized throughout this litigation that he *sued the county, not county* employees. He also points out that his case is not predicated on a theory of respondeat superior but rather on a theory of direct liability against the county for its failure to perform a statutory duty.

Under the rationale in *Pletan*, we conclude that vicarious official immunity must extend to the county regardless of how respondent pleaded his case. In *Pletan*, the supreme court stated that "whether to extend official immunity to the governmental employer is a policy question." *Pletan*, 494 N.W.2d at 42. Whether respondent predicated his case on a theory of vicarious or direct liability, the policy behind extending official immunity to the county in this case remains the same: if the county is subject to liability due to the actions of its employees, this could unduly *influence the employees to abandon legitimate public policy choices in the future.*

6. Respondent's complaint alleges, generally, negligence of the county in failing to investigate the abuse of his children. But in his trial court memoranda, respondent noted that his "claim of negligence includes the factor that the Benton County intake person did not relate sufficient information to his intake and assessment team," and that "therefore there was a negligent failure to recognize a telephone complaint as being a report of neglect." This explanation of

phone call, the social worker consulted with his supervisor and child abuse assessment worker, Barbara Schmidt, and the three of them made the decision that the call did not constitute a report of neglect. But at her deposition, Schmidt testified that the only thing she had been told at this meeting was that "an out-of-state father called and said that his daughter * * * stated that their stepfather walked around the home nude and that he watched pornographic films." She also testified that she had not been told that the stepfather was verbally abusive; that he chose times when the mother was not home to walk around nude; that the daughter felt uncomfortable when exposed to the nudity; and that she herself had seen pornographic movies. Schmidt stated that the entire conduct described by respondent would constitute a threat to a child's mental health and consequently his call would have been a report of neglect under the Act requiring an assessment. If it is determined that the social worker had in fact failed to relay complete information to his colleagues, he may have been negligent.

■ We conclude that the social worker would not have been protected by official immunity for an alleged failure to communicate information accurately. While the decisionmaking by the county employees in this case was a discretionary function protected by official immunity, the communica-tion of information on which that decision was based was ministerial. The duty to accurately communicate all the information was "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Elwood*, 423 N.W.2d at 677 (quoting *Cook*, 200 Minn. at 224, 274 N.W. at 167).

The policy behind official immunity supports this conclusion. Imposing liability on a social worker for failing to communicate information accurately will not deter the employee from carrying out public policies embodied in statutory duties. Instead, imposing liability for the ministerial task of communicating information will encourage the employee to exercise care in the future. *See Carradine v. State*, 494 N.W.2d 77, 81 (Minn.App.1992) (accurate reporting on arrest report is a ministerial function; police officer has no official immunity from suit where it is alleged that he did not accurately report information on an arrest report), *pet. for rev. granted in part, denied in part* (Minn. Feb. 23, 1993); *see also Selover v. Sheardown*, 73 Minn. 393, 76 N.W. 50 (1898) (no immunity for court clerk who negligently failed to report a verdict to a lawyer).

■ The social worker would not be protected by official immunity in this situation if he were a defendant.[7] If the employee enjoys no official immunity, then the

---

his case was declared to support respondent's argument that county wrongdoing could not be characterized as an exercise of discretion. At the conclusion of his memorandum, stating unresolved fact questions precluding summary judgment, respondent argued, *inter alia*, the need to determine whether safety of the children was negligently disregarded due to "the apparent failure to compile adequate preliminary information from the abuse reporter."

The trial court concluded Benton County enjoyed no immunity for decisionmaking of its social service agency. Following *Pletan*, decided by the supreme court since the trial court acted, we have found the county benefited vicariously by the agency staff's official immunity. But we must affirm the trial court's immunity decision if it can be sustained for other reasons. *Schweich v. Ziegler*, 463 N.W.2d 722, 728 (Minn. 1990). We find such a basis for affirming upon analysis of the assertion that county staff negligently handled respondent's abuse report.

7. The statutory immunity in subdivision 4(b) would not protect the social worker in this context. The statute requires that social workers act in good faith and exercise due care in complying with the law before they are granted immunity. There is at least a factual dispute whether the social worker exercised due care precluding summary judgment on the basis of statutory immunity.

We decline appellant's suggestion that we interpret the phrase "acting in good faith and exercising due care" in subdivision 4(b) to mean nothing more than "good faith." Appellant's argument for this interpretation is based on a case, interpreting a different statute, that refused to decide whether that statute applied. *See Elwood v. County of Rice*, 423 N.W.2d 671, 678–79 (Minn.1988). By using the phrase "exercising due care," we conclude the legislature did not intend to grant immunity to social workers who performed their duties in a careless manner.

county cannot enjoy vicarious official immunity. Nor is the county protected by discretionary immunity; communication of information to fellow employees in this context clearly does not involve planning decisions or the balancing of policy objectives. Therefore, Benton County is not entitled to summary judgment on the issue of whether the social worker negligently communicated information to his colleagues.

It is unclear from the record before us whether respondent can sustain a cause of action against Benton County based on the social worker's alleged negligence in handling information. As noted earlier, respondent brought this action directly against Benton County for violation of a statutory duty and "disavowed any reliance on a theory of vicarious liability." It is uncertain whether the social worker's alleged failure to communicate information is a statutory duty owed by the county to the respondent and his children sufficient to sustain the cause of action, and we do not speculate on that issue here. On remand, the trial court must decide whether respondent can proceed or succeed in this case based solely on the social worker's alleged negligent failure to communicate information.

## DECISION

Under *Pletan*, Benton County is entitled to vicarious official immunity from suit based on the alleged negligent decision of its employees that respondent's telephone call did not constitute a report of neglect. But there is no official immunity and hence no vicarious official immunity for the alleged negligence of a social worker in failing to accurately communicate information to his colleagues.

As it conducts further proceedings in the case, the trial court is instructed to enter summary judgment in favor of Benton County with respect to the decision of the county social workers that respondent's call did not constitute a report of neglect.

**Affirmed as modified.**