In her responsive appellate brief, Raymond's position is less clear. In one portion of her brief, she states, "This case is about bad driving [but] not about policing." She also states that Giese "was off duty and not performing any duties within the scope of his employment as an investigator" and, thus, "this case has nothing to do with questioning an official's professional judgment in the line of duty." But in another portion of her brief, she argues that "Giese of all people should have realized" that he was approaching "an obvious accident scene" because of "his experience seeing accidents." In addition, she argues that Kelley "would be alive if Giese had pulled over to activate his emergency lights or had secured the scene" before the collision.
After reviewing the record, we acknowledge that the nature of Raymond's claim has not been perfectly clear and consistent throughout the history of the case. We believe that it is appropriate to focus on the memorandum of law that Raymond filed in the district court in opposition to the summary-judgment motion. We are, of course, reviewing the district court's ruling on that motion, and the district court's ruling naturally is based on Raymond's description of her claim in that memorandum. There Raymond argued that "standard liability applies to the driver and the owner of the vehicle, like any other auto accident." Given that argument, we assume that Raymond intends to prove that Giese was negligent only because he breached the standard of care that applies to all motorists-" 'the standard of care to be expected from a reasonably prudent person under similar circumstances.' " See Gruenhagen v. Brelje , 252 Minn. 203, 206, 89 N.W.2d 738, 741 (1958) (quoting Schubitzke v. Minneapolis, St. Paul & Sault Ste. Marie R.R. , 244 Minn. 156, 160, 69 N.W.2d 104, 107 (1955) ); see also Berg v. Nelson , 559 N.W.2d 722, 724 (Minn. App. 1997), review denied (Minn. May 13, 1997).
So long as Raymond confines her claim to that theory, Giese may not invoke the doctrine of official immunity because he was not performing his official duties when he engaged in the conduct that Raymond alleges was negligent. During the relevant period of time, Giese was driving from his home in Chisago County to Pine County with the intention of going to work. When Giese saw a stalled vehicle in the median, he perceived that the vehicle had slipped off the road into the median in a "spin-out" and had come to rest at the edge of the left northbound lane of traffic. Based on that perception, Giese did not take any particular action as a public official, such as stopping near the stalled vehicle to check on the welfare of its driver or occupants. He testified in his deposition that he took no action as a public official because spin-outs are fairly common on Minnesota roads in wintertime, because it did not appear that anyone was injured or in need of emergency assistance, and because the vehicle was located in Chisago County, which is not the county where he was a public official. Moments later, Giese saw an object on the roadway in his lane of traffic and collided with it. These undisputed facts demonstrate that Giese was not performing the duties of his public office when he engaged in the conduct that Raymond alleges was negligent. Because Giese was not performing any official duties, the *527 doctrine of official immunity is not necessary to "protect [him] from the fear of personal liability that might deter independent action and impair effective performance of [his] duties," Elwood , 423 N.W.2d at 678, or to ensure that he is "able to perform [his] duties effectively, without fear of personal liability that might inhibit the exercise of [his] independent judgment," Kariniemi , 882 N.W.2d at 600. Accordingly, Giese may not invoke the doctrine of official immunity in response to Raymond's claim that he breached the standard of care of a reasonably prudent person under similar circumstances. Thus, we need not consider the second and third parts of the three-part official-immunity analysis.[2]
In sum, given Raymond's theory of the case during district court proceedings, the district court did not err by denying the summary-judgment motion with respect to Giese because the district court correctly concluded that Giese is not entitled to official immunity.
II.
Appellants argue that the district court erred by concluding that the county is not entitled to vicarious official immunity.
The doctrine of vicarious official immunity protects the state or a political subdivision from liability based on the conduct of an employee who is protected by the doctrine of official immunity. Wiederholt v. City of Minneapolis , 581 N.W.2d 312, 316 (Minn. 1998). "In general, when a public official is found to be immune from suit on a particular issue, his government employer will enjoy vicarious official immunity from a suit arising from the employee's conduct." Schroeder v. St. Louis County , 708 N.W.2d 497, 508 (Minn. 2006). Allowing a governmental employer to receive the protection of vicarious official immunity avoids the situation in which the employer's " 'officials' performance would be hindered as a result of the officials second-guessing themselves when making decisions, in anticipation that their government employer would also sustain liability as a result of their actions.'" Id. (quoting Anderson v. Anoka Hennepin Indep. Sch. Dist. 11 , 678 N.W.2d 651, 664 (Minn. 2004) ). But if a public official is not entitled to official immunity, the public official's employer is not entitled to vicarious official immunity. Anderson , 678 N.W.2d at 664 ; Pletan , 494 N.W.2d at 42-43.
*528 In this case, the county argued to the district court that it is entitled to vicarious official immunity. The district court concluded that the county is not entitled to vicarious official immunity because Giese is not entitled to official immunity. On appeal, the county renews its argument that it is entitled to vicarious official immunity. Raymond does not respond directly to the county's argument. But she states in her responsive brief that "Pine County has vicarious liability in this case merely as an owner of the vehicle pursuant to Minn. Stat. § 169.09, subd. 5(a) (not as employer)."[3] She also states that "Giese was off duty and not performing any duties within the scope of his employment." Her latter statement is consistent with the fact that Raymond does not allege that the county should be vicariously liable on the ground that it was Giese's employer. See Minn. Stat. § 466.02 (2016) (imposing liability on municipalities for torts "of its officers, employees and agents acting within the scope of their employment or duties").
In light of Raymond's theory of liability with respect to the county, it appears unnecessary to resolve the county's argument that it is entitled to vicarious official immunity. Nonetheless, if we were to consider it, we would conclude that the county is not entitled to vicarious official immunity because Giese is not entitled to official immunity.
Thus, the district court did not err by denying the summary-judgment motion with respect to the county because the district court correctly concluded that the county is not entitled to vicarious official immunity.
DECISION
Giese is not entitled to official immunity because he was not performing his official duties when he engaged in the conduct that Raymond alleges was negligent. Pine County is not entitled to vicarious official immunity. Therefore, the district court did not err by denying appellants' motion for summary judgment.
Affirmed.

We note, however, that a different analysis would be necessary if Raymond were to expand or alter her theory of the case at trial. For example, if Raymond were to seek to prove that Giese was negligent because he did not perform his official duties before colliding with Kelley or did not utilize his law-enforcement training and experience (as hinted in Raymond's appellate brief), Giese then may invoke the doctrine of official immunity. A theory of liability that is based on a public official's discretionary decision about whether to perform official duties is just as deserving of protection as a public official's decision about how to perform official duties. See Vassallo , 842 N.W.2d at 462 ("Official immunity can apply to any act that involves an exercise of independent judgment...."). In Pletan , the supreme court concluded that a police officer was entitled to official immunity for both his "decision to engage in a car chase" and his decision "to continue vehicular pursuit." 494 N.W.2d at 41. Official immunity also may extend to a discretionary decision not to take action pursuant to official duties. For example, in S.L.D. v. Kranz , 498 N.W.2d 47 (Minn. App. 1993), this court concluded that county social workers were entitled to official immunity for their collective decision not to investigate an incomplete report of child abuse. Id. at 52-53. Accordingly, a public official may be entitled to official immunity when he or she is making a decision about whether to perform his or her official duties. If Raymond were to expand or alter her theory of the case, and if Giese then were to invoke the doctrine of official immunity, it would be necessary for the district court to conduct all three steps of the official-immunity analysis.

The county did not argue to the district court that it is immune from a claim based on section 169.09, subdivision 5(a). Accordingly, that statute is not at issue on appeal.