JAMES H. PIERSON v. MERLE EDSTROM.

160 N. W. (2d) 563.

July 26, 1968—No. 40,938.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *Mary Jeanne Coyne,* for appellant.

*Carroll, Cronan, Roth & Austin* and *Edward R. Soshnik,* for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the Dakota County District Court denying plaintiff's alternative motion for judgment notwithstanding the verdict or a new trial in an action to recover damages for personal injuries allegedly sustained when his car was struck from the rear by defendant's automobile.

Plaintiff, James Homer Pierson, and his wife, Vera, live about 9 miles west of Hastings. In the late afternoon of February 5, 1965, he phoned her and told her not to wait dinner for him because he had some errands to run in preparation for a trip they were planning. Several hours later, at about 1 o'clock in the morning of February 6, plaintiff again phoned his wife, told her he was having trouble with his car, and asked her to pick him up at the North Star Cafe, apparently located some distance north of the Pierson home. He warned her to take it easy because it was foggy. She met plaintiff at the North Star and after staying there about an hour they drove to the point where plaintiff's car was parked on Highway No. 52, a four-lane highway with two lanes going north and two going south. It was then about 2:30 a. m. and still foggy.

Plaintiff's car was parked on the blacktop shoulder adjoining the traveled concrete portion of the southbound lanes. With plaintiff's help, Mrs. Pierson lined her car up behind plaintiff's and pushed his car along the shoulder. Plaintiff's car started after it had been pushed a few feet, and both plaintiff and his wife then drove out onto the outside lane and proceeded south. After plaintiff had driven a distance, he slowed down, pulled off on the blacktop shoulder, and stopped. Mrs. Pierson, who was right behind him, drove up beside his car and stopped on the highway. Speaking to him through the open right window, she asked him what to do. He said they would leave his car there until morning, and then told her to "get off the highway." At that moment, defendant's car struck both plaintiff's and Mrs. Pierson's cars from the rear.

Defendant had been proceeding south on Highway No. 52 at, according to his testimony, 20 to 30 miles per hour. Admittedly there was frost

on the highway, although there is some dispute as to whether the traction was good or bad. Defendant said he saw the taillights of Mrs. Pierson's car when he was about 70 feet from it. When he saw her car, he swerved to the right and then applied his brakes. He said he did not see plaintiff's car until he was about 30 feet from it. By that time his car, which had begun skidding 60 feet from the point of impact, was out of control, and it collided with both cars.

After the collision, defendant's car came to rest 66 feet beyond the point of impact. Plaintiff's car was 99 feet from the point of impact, and Mrs. Pierson's, 25 feet. Apparently neither defendant nor Mrs. Pierson was injured, but plaintiff suffered skull fractures at two points and his left arm and leg were partially paralyzed. He has since returned to his job. At the time of trial, he still suffered from loss of memory and double vision.

In response to special interrogatories, the jury found that all three drivers were negligent but that only Mrs. Pierson's negligence was a proximate cause of the accident. The court adopted the jury's findings and ordered judgment for defendant. The sole issue presented on this appeal is whether a new trial is required because of the admission of opinion testimony by a traffic officer concerning whether defendant was going too fast and whether he was at fault.

Henry Sasota, the traffic officer who investigated the collision, was called as a witness by plaintiff. On direct examination, in response to a request to give the gist of what Mrs. Pierson had said about the accident when he came to the scene, he said:

"A.  She was pushing the Renault, trying to start the Renault, pulled on the shoulder and Mrs. Pierson pulled alongside of the Renault still on the pavement to talk to her husband and he remarked, 'You'd better pull off the road.' At that time the car was hit from behind—very foggy at the time. And also she states that she saw the Edstrom car coming from behind hers in her rear vision mirror at a high rate of speed and why wasn't he arrested."

On cross-examination, the following transpired:

"Q.  Officer, in reply to Mrs. Pierson's questions as to why Mr. Ed-

strom was not arrested, you said because this wasn't his fault, isn't that true?

"A. Words to that effect.

"Q. And this is the reason he wasn't arrested?

"A. Yes, sir."

Plaintiff objected to these questions. The trial judge overruled the objection to the first one. He apparently sustained the objection to the second one but did not instruct the jury to disregard it because he was under the mistaken impression that it had not been answered.

A short time later, defendant asked on cross-examination:

"Q. Now, he [defendant] told you that he had been going about 25 miles per hour, is that right?

"A. Or so, yes, sir.

"Q. Is there anything inconsistent, based upon your various experiences in investigating, is there anything inconsistent, considering the location of his vehicle, following the accident and the location of the skid marks, is there anything inconsistent in the position of the vehicle and [the] fact that he said he was going 25 miles per hour?"

At this point plaintiff's attorney objected, without success, and the officer gave this answer:

"Bearing in mind the road conditions, the distances traveled to the point of rest, that is, under those conditions, things were pretty normal; nothing out of line at all there."

In his final argument, defendant directed the jury's attention to the officer's opinions, at one point saying "my recollection is that he didn't feel that there is any evidence; that there is any excessive speed on anybody's part." Somewhat later he made the following comments:

"Then the officer was asked what conversation Mrs. Pierson had with him and why Mr. Edstrom wasn't arrested, and the police officer was asked, and the question was asked of him, 'Officer, in reply to the question as to why Mr. Edstrom wasn't arrested, you said "because it wasn't his fault," is that true?' And the police officer said words to that effect. And I think if we have anybody that is impartial at the scene of the acci-

dent * * * it is the highway patrol officer who has had 20 years of investigative experience in this type of case.

"It is true that he didn't see the accident, but he has investigated an awful lot of accidents over 20 years, and, I think, his testimony in this case should be certainly considered."

It is our opinion that the case must be reversed and a new trial granted on all of the issues. It was permissible cross-examination, necessary to counter the insinuation implicit in Mrs. Pierson's question, for defendant to inquire of the officer concerning his response to her question. But it was a clear invasion of the jury's province to go beyond that and elicit the officer's opinion as to whether defendant was at fault. Nor was the officer, who was not an eyewitness to the accident, qualified to give an opinion as to the speed of defendant's car. Defendant's repeated reference to the officer's opinions in his closing argument served to emphasize this impermissible testimony.

In view of our determination that a new trial must be granted, we deem it unnecessary to discuss the testimony in further detail except to say that without the objectionable testimony of the traffic officer the jury might well have determined, when it found defendant negligent, that such negligence was at least a concurrent proximate cause of the accident. Defendant testified on direct examination that he was traveling at no more than 30 miles per hour when he saw the taillights of Mrs. Pierson's car. Yet, when asked why he did not turn into the apparently unobstructed left southbound lane, he replied, "I didn't have time. It happened so fast." There was other evidence also, such as skid marks, from which a jury might have found that defendant was going faster than he testified. Thus, an important part of the defense here was the officer's opinions that defendant's speed was not excessive and that the accident was therefore not his fault. We must, accordingly, reverse for a new trial.

Reversed and new trial granted.