## GEORGE JACKSON AND ANOTHER v. WYATT BROS. CEMENT COMPANY.

203 N. W. 2d 360.

December 29, 1972—No. 43463.

*Cox & King, Charles A. Cox,* and *Leo B. Stern,* for appellants.
*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and
*Robert M. Frisbee,* for respondent.

Heard before Knutson, C. J., and Todd, MacLaughlin, and
Schultz, JJ.

Todd, Justice.

Action for injuries sustained by Allan G. Jackson as a result
of a truck-bicycle accident and for consequential damages sustained by his father, George A. Jackson. The jury returned a verdict finding plaintiff Allan Jackson 75 percent negligent. The
trial court denied plaintiffs' motion for a new trial on the ground
that errors of law occurred at the trial, and plaintiffs appeal. We
reverse.

The accident occurred on August 29, 1966, when plaintiff
Allan Jackson (Allan) was 12 years old. James McInnes
(James), Mark Johnson (Mark), and two other friends were
riding their bicycles in an easterly direction on Lincoln Street
and approached defendant's truck from the rear as it was approaching the intersection with Highway No. 65 in Spring Lake
Park, Minnesota. One of the boys crossed the street. The inter-

section was controlled by traffic signals, and the truck had either stopped or was barely moving, waiting for the signal to change.

Mark, James, and one of the other boys stopped behind the truck. Allan pulled up alongside the right side of the truck just to the rear of the cab, stopped his bike, and straddled it. The truck then proceeded to make a right turn. The driver testified he had his turn signals on and there is no testimony refuting this although some of the witnesses did not recall seeing the turn signals. In making the turn, the driver pulled out into the intersection and then swung back to his right because of the size of the truck, a large, semi-trailer cement truck. Apparently the rear wheels caught Allan as he was either standing or beginning to move his bike into the intersection. No witness actually saw the truck come in contact with Allan, and he has no recollection of the events regarding the accident.

Shortly after the accident, an investigator on behalf of defendant contacted James and Mark. He solicited statements from both of them. In the statement taken from James by the investigator, there appears the following sentence: "I don't think the driver could have seen Allan and I think Allan put himself in a dangerous position."

James testified at trial, and on cross-examination was asked why he did not come up alongside the truck. Despite objection by plaintiffs' counsel, the court permitted the question to stand, and James indicated in his answer that there was no reason, "We just stopped behind it." Counsel for defendant pursued this line of questioning despite repeated objection, and James would indicate only that he and one of the other boys had stopped behind the truck probably because Mark was in front of them.

Counsel for defendant then sought to impeach James' testimony by use of his prior statement. Counsel for plaintiffs again objected, but the court allowed the question and the reading of the answer from the prior statement as impeaching testimony. Subsequent to James' testimony, counsel for plaintiffs moved for a mistrial. The motion was denied.

Mark was called to the stand to testify for plaintiffs and on cross-examination was also asked, "Why didn't you go around the right-hand side of the truck?" Counsel for plaintiffs again objected, but the court instructed the witness to answer, and he stated, "Well, I felt it was a rather precarious place to be with a long truck making a right turn, to be on the right-hand side like that." In response to an additional question, "By precarious you mean dangerous?" he answered, "Yes, it was rather dangerous." Counsel for defendant stressed this testimony in final argument. The jury returned a verdict assessing Allan's negligence at 75 percent and that of defendant's truckdriver at 25 percent.

Plaintiffs contend that the trial court erred in allowing counsel to question Mark regarding the reason he did not go alongside the truck since his conclusion that it was dangerous was inadmissible opinion testimony and an invasion of the province of the jury. Plaintiffs further assert that the trial court erred in the use of James' prior statement for impeaching purposes since the original evidence would not be admissible, again as a conclusion of the witness and invasion of the province of the jury.

The defendant offers three theories under which the testimony should be admitted despite the exclusionary rule regarding opinion testimony, namely, (a) that the opinion is merely a shorthand way of giving facts that cannot otherwise be communicated to the jury; (b) that it was relevant testimony on the standard of care of a minor of plaintiff's age, training, and experience; and (c) that even if erroneous, its introduction was not prejudicial because the jury had before it all the facts supporting the opinion.

Defendant's first theory for admissibility is based on Wigmore's criticism of the opinion rule as commonly applied. Wigmore strongly criticized the attempt to differentiate "fact" from "opinion." He accepted the theory (but not the common application) of the test that lay witness' inferences—

"* * * are inadmissible when the jury can be put into a posi-

tion of equal vantage for drawing them,—in other words, when *by the mere words and gestures of the witness the data he has observed can be so reproduced that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion.*" 7 Wigmore, Evidence (3 ed.) § 1924.

This rule has been long accepted in Minnesota. In Lestico v. Kuehner, 204 Minn. 125, 131, 283 N. W. 122, 126 (1938), this court criticized some rulings of the trial court for being too restrictive on testimony challenged as calling for a conclusion of the witness:

"\* \* \* To illustrate, defendant was asked, on his direct examination: 'And did you observe whether—where you made the sudden turn, where the car had changed its direction from the tire marks?' This was excluded 'as calling for the conclusion of the witness.' That ruling was wrong because the question plainly asked for a fact within the personal observation of the witness.

"True, mere conclusion of witnesses, other than those properly admitted as opinion testimony, are not competent. But many questions permit, or are answered by, what is in form a conclusion although in essence a statement of fact. Then, there are numerous facts \* \* \* which can only be narrated by a statement in form an opinion. As to other than competent opinion, *the problem is to distinguish between that mental process which is a mere conclusion and that other and different one which is recollection of facts and an attempt to state them.*" (Italics supplied.)

Thus, this court has admitted "opinion" testimony that a truck was moving rather than standing still. "The observations of witnesses under similar circumstances have been frequently received as to questions of speed, position, direction, motion, and like matters." Gruenhagen v. Brelje, 252 Minn. 203, 208, 89 N. W. 2d 738, 742 (1958). These questions have in common the fact that there is no way of describing them short of the ultimate "opinion"; there is no way to communicate the attributes of "move-

ment", for example, other than to state that an object is moving.

The question of dangerousness, on the other hand, differs both in the fact that the underlying attributes creating the dangerous condition can be communicated and, perhaps more importantly, the question requires the value judgment of the witness in order to reach the conclusion.

Opinion testimony as to "dangerousness" has long been ruled inadmissible. In Moore v. Townsend, 76 Minn. 64, 78 N. W. 880 (1899), counsel asked the village marshal why he spoke to defendant about a ladder which subsequently fell on plaintiff. This court held that it was error for the trial court to refuse "to strike out an answer, irresponsive in part, in which was the opinion of the witness as to the ladder being dangerous while standing against the building." 76 Minn. 68, 78 N. W. 881.

In other cases we have dealt with the problem of distinguishing between a mental process which is a mere conclusion and another and different process which is a recollection of facts and an attempt to state them.[1]

Statements solicited by the investigator for the defendant from Mark and James that it was dangerous to go alongside the truck are not statements of fact but are conclusions and are a direct invasion of the province of the jury as they necessarily contain a value judgment as to the risk and standard of care.

Defendant's other ground for admissibility is that the testimony was relevant to the standard of care. This argument is wholly erroneous if it seeks to treat as an evidentiary matter the standard of the reasonable man—or, in this case, the reasonable minor of plaintiff's age, experience, etc. Wigmore points out this error in his discussion of the distinction between evidence showing the conduct of others to show customary practice and its use to show a standard of conduct (2 Wigmore, Evidence [3 ed.] § 461) :

[1] Anderson v. G. N. Ry. Co. 74 Minn. 432, 435, 77 N. W. 240, 241 (1898); Flaherty v. Minneapolis & St. L. Ry. Co. 251 Minn. 345, 87 N. W. 2d 633 (1958); Pierson v. Edstrom, 281 Minn. 102, 160 N. W. 2d 563 (1968).

"(1) The conduct of others *evidences* the tendency of the thing in question; and such conduct—*e.g.* in using chains on a hill, felt shoes in a powder-factory, railings around a machine, or in not using them—is receivable with other evidence showing the tendency of the thing as dangerous, defective, or the reverse. But this is only evidence. The jury may find from other evidence that the thing was in fact dangerous, defective, or the reverse, and the maintenance was or was not negligent, in spite of the above evidence. (2) Meanwhile, the *substantive law* tells them what the *standard of conduct* for negligence is; and this standard is a fixed one, independent of the actual conduct of others. To take that conduct as furnishing a sufficient legal standard of negligence would be to abandon the standard set by the substantive law, and would be improper.

"This conduct of others, then, (1) is receivable as some evidence of the nature of the thing in question, because it indicates what is the influence of the thing on the ordinary person in that situation; but (2) it is not to be taken as fixing a legal standard for the conduct required by law."

Thus, defendant is arguing here that the opinion should be admissible for the very reason it in fact is inadmissible—to set the standard of care. This is specifically the function of the jury and should not be introduced into the case by way of opinion evidence.

In support of its position that the evidence, even though admitted erroneously, was not prejudicial, defendant cites only State v. Hines, 270 Minn. 30, 133 N. W. 2d 371 (1964). In that case, which was tried to the court without a jury, a witness testified over objection that it was his impression that defendant knew that his brother was stealing a car when both were at the scene. The court found the answer "pure conjecture" which should have been excluded but declined to reverse since the answer "was very unlikely to be deemed of value by an exprienced trial judge and even more unlikely to be deemed acceptable as

proof resolving the crucial issue." 270 Minn. 37, 133 N. W. 2d 376. This reasoning is clearly inapplicable to a jury trial in which counsel strenuously argues to the jury that the testimony in question was of great weight and value, as was the case here.

For the reasons stated, we hold that the trial court erred in permitting the cross-examination over proper objection and erred in refusing to grant plaintiffs' motion for a mistrial.

The evidence introduced in the cross-examination of James in the form of impeachment was wholly improper for the reasons stated above. The evidence could not come in on direct examination and therefore cannot be indirectly introduced into the case as supposed impeachment of inadmissible testimony. The rule is well settled that witnesses can be impeached by prior inconsistent statements only on material and admissible matters. Dornberg v. St. Paul City Ry. Co. 253 Minn. 52, 91 N. W. 2d 178 (1958).

Neither party has appealed from the award of damages by the jury in this matter. The purpose of having the jury answer the damages question is to avoid the necessity of retrying this issue when not questioned by either party. Therefore, the matter is remanded to the trial court for a new trial on the issue of liability only.

Reversed and remanded for new trial.