*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0019**

State of Minnesota,
Respondent,

vs.

Justin Kainoa Kaneakua,
Appellant.

**Filed December 18, 2023
Affirmed
Segal, Chief Judge**

Hennepin County District Court
File No. 27-CR-21-14789

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam Petras, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Segal, Chief Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**SEGAL**, Chief Judge

In this appeal from a final judgment of conviction of simple robbery, unlawful possession of tear gas, and third- and fifth-degree assault, appellant argues the district court

(1) violated his right to a speedy trial, (2) violated his right to be tried before an impartial tribunal, and (3) erred in allowing appellant's probation officer—over appellant's objection—to identify appellant from photographs. We affirm.

**FACTS**

In July 2021, police responded to a 911 call that a group of people had been sprayed with a chemical irritant. The 911 caller said that the suspect had a tattoo that looked like a tear drop by one of his eyes. And one of the photos of the suspect provided to police by a witness showed that the suspect had a large bird tattoo on one of his forearms. From the description and photographs, law enforcement identified the suspect as appellant Justin Kainoa Kaneakua.

Respondent State of Minnesota charged Kaneakua in August 2021, with simple robbery for theft of a cell phone; two counts each of third- and fifth-degree assault for spraying four people with tear gas; and unlawful possession of tear gas by an ineligible person. Kaneakua also had three other felony cases pending in Hennepin County at the time. The trial in this case began on September 6, 2022—364 days after Kaneakua first demanded a speedy trial. The jury found Kaneakua guilty of all six counts in the complaint. The district court sentenced Kaneakua to concurrent executed prison terms of 51 months for the robbery count and 28 months for one of the third-degree assault counts, and to 90-day jail terms for the fifth-degree assault counts.

**DECISION**

**I.      The district court did not err in denying Kaneakua's motion to dismiss.**

Kaneakua maintains that the district court erred in denying his motion to dismiss for violation of his speedy-trial right because his trial did not commence until 364 days after his first demand.  Under the United States and Minnesota Constitutions, a criminal defendant has the right to a speedy trial.  U.S. Const. amend. VI; Minn. Const. art. I, § 6. "The right to a speedy trial acts as a safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.''  *State v. Paige*, 977 N.W.2d 829, 837 (Minn. 2022) (quotation omitted).  A claim that the right to a speedy trial was violated is subject to de novo review. *State v. Osorio*, 891 N.W.2d 620, 627 (Minn. 2017).

In evaluating a defendant's speedy-trial-violation claim, courts consider the factors articulated by the U.S. Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972). Those factors include: "(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant."  *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999); *see also State v. Widell*, 258 N.W.2d 795, 796 (Minn. 1977) (adopting the *Barker* factors in Minnesota). Although deprivation of the right to a speedy trial requires dismissal, not all delays constitute such a violation.  *State v. Jones*, 977 N.W.2d 177, 190 (Minn. 2022).  The *Barker* factors are not exclusive or prescriptive; instead, the court must "engage in a difficult and sensitive balancing process" to determine whether a delay violated the defendant's speedy-

3

trial right. *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015) (quotation omitted); *see also Paige*, 977 N.W.2d at 837 (explaining that "the right must be considered within the context of each case").

### *Length of Delay*

The first *Barker* factor, length of delay, is governed by rule 11.09 of the Minnesota Rules of Criminal Procedure, which requires trials to begin on demand of any party within 60 days after the entry of a plea other than guilty, "unless the court finds good cause for a later trial date." Minn. R. Crim. P. 11.09(b). Failure to commence a trial within 60 days is deemed "presumptively prejudicial" to the defendant and triggers a duty to review the remaining *Barker* factors to assess whether the delay has caused a constitutional deprivation of the defendant's rights. *Paige*, 977 N.W.2d at 838. Because the trial began 364 days after Kaneakua's first speedy-trial demand, the delay here is facially prejudicial and further analysis is required. *See State v. Jones*, 392 N.W.2d 224, 235 (Minn. 1986).

### *Reason for Delay*

This court next considers which party is responsible for the delay. *Paige*, 977 N.W.2d at 838. Both the state and the defendant's conduct are considered in this analysis. *See Vermont v. Brillon*, 556 U.S. 81, 90 (2009). This court considers the specific reasons for the delay after determining which party is responsible, then assesses the weight to be accorded against that party based on the reason for the delay. *Taylor*, 869 N.W.2d at 19-20 (noting that both parties were responsible for a delay but determining "[b]ecause both continuances were for good cause, this factor weighs against a speedy-trial violation); *Osorio*, 891 N.W.2d at 628, 632-33 (holding that a delay caused by the state's negligence

weighs against the state, but less heavily than if the delay were intentional). Attempts by the state to deliberately "hamper the defense" weigh heavily against it. *State v. Mikell*, 960 N.W.2d 230, 251 (Minn. 2021). Delay caused by reasons like court congestion are deemed more neutral and are weighed less heavily against the state. *Id.* And delays deemed to be for good cause, such as the unavailability of a prosecution witness due to reasons that are not avoidable by the state, are not weighed against the state. *Id.* Delays that result from the defendant's or defense counsel's actions may be deducted from the delay calculation, even though the state and the courts ultimately bear the burden of bringing a case to trial. *See Jones*, 977 N.W.2d at 191; *Windish*, 590 N.W.2d at 317.

Kaneakua made an initial demand for a speedy trial in all four of his pending felony cases on September 7, 2021; the trial in this case did not commence until September 6, 2022. Both Kaneakua and the state bear some fault for the delay in bringing this case to trial. Kaneakua is at fault for at least one-third of the 364 days. This includes delays that resulted from his request for a competency evaluation, during which he temporarily waived his speedy-trial demand; the unavailability of his counsel for a March 2022 trial date; and his failure to appear for a June 2022 trial date.[1]

---

[1] Contrary to the state's contentions, Kaneakua's failure to appear for a trial date does not waive his former speedy-trial demands. Like most courts, Minnesota disfavors blanket constitutional waivers. The defendant's failure to appear is a component of the *Barker* speedy-trial-violation analysis, not a presumed waiver of a fundamental right. *Windish*, 590 N.W.2d at 317 (citing *Barker*, 407 U.S. at 524-28) (rejecting waivers and agreeing with the United States Supreme Court that "the better approach is to analyze the case by applying the *Barker* factors").

Most of the other causes of delay are attributable to the state. But the district court found that many of the state's delays were due to court congestion and the unavailability of the state's witnesses and prosecutors. *See State v. Friberg*, 435 N.W.2d 509, 513 (Minn. 1989) (noting that docket congestion is not a good cause for delay, but it also does not weigh heavily against the state).

The remaining reasons for delay include the fact that two of Kaneakua's other felony cases were prioritized for trial because those offenses occurred before the offenses in this case. The first of Kaneakua's felony cases was tried in January 2022. The second case was scheduled for trial in February 2022, but the state dismissed that case for lack of probable cause after it spoke to a key witness shortly before the trial was to begin. Having dismissed the second case, the state asked for four weeks to allow it to subpoena witnesses for this case. The district court found that the state's request for the delay to subpoena witnesses was supported by good cause and set a March trial date. *See, e.g.*, *Taylor*, 869 N.W.2d at 20 (concluding state's witness unavailability was a good cause for delay); *Mikell*, 960 N.W.2d at 251 (determining that the state's choice to prioritize chronological prosecution of the defendant's outstanding other charges was of neutral weight). But the district court authorized a conditional release of Kaneakua from custody in February 2022 because of the delays.[2]

---

[2] The district court authorized Kaneakua's release to treatment starting February 24, 2022—the first date a bed was available at the treatment center. But Kaneakua's release was delayed due to an outstanding warrant in an Anoka County case. After resolving the Anoka County warrant, Kaneakua was eventually released to treatment on March 30, 2022.

This still leaves a 64-day delay between the April 18 trial date (the new trial date set after the March trial date was cancelled because of the unavailability of defense counsel), and the June 2022 trial date. The district court stated that the delay was caused by a scheduling issue with the courts, but ultimately found Kaneakua responsible for this delay because he filed a motion to suppress only ten days before the April trial was set to begin. The record reflects, however, that the suppression motion and the timeline for its review were discussed on March 28, at least several weeks before the April 18 scheduled trial date. Because there are no transcripts of the April proceedings, or any hearings occurring between March 28 and July 8, 2022, we hesitate to infer any reason for the delay. Accordingly, we will not attribute the delay between April and June to either party. *See generally United States v. Jenkins-Watts*, 574 F.3d 950, 966-67 (8th Cir. 2009) (rejecting appellant's argument for their lack of citation to any evidence in the record indicating the state was responsible for the delay).

After excluding the state's good-cause reasons for delay and the April delay that lacks substantiation in the record, the state is only at fault for approximately 89 days. Despite its fault, the state genuinely tried in good faith to bring Kaneakua's case to trial and the district court scheduled six different trial dates before this case was finally tried on September 6, 2022. Because the reasons for the state's delay are more neutral, we do not afford this factor much weight in our analysis.

### Assertion of Defendant's Right to a Speedy Trial

We next consider the defendant's assertion of his right to a speedy trial and the "frequency and force" of that demand. *Paige*, 977 N.W.2d at 840 (quoting *Friberg*, 435

7

N.W.2d at 515).  In this case, Kaneakua repeatedly and forcefully asserted his right to a speedy trial—approximately nine times, including in his motion to dismiss.  Kaneakua is thus entitled to the full weight of this factor.

### Prejudice

Finally, this court considers prejudice to the defendant.  *Osorio*, 891 N.W.2d at 631. In determining whether a defendant suffered prejudice, the court examines three primary interests: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired."  *Taylor*, 869 N.W.2d at 20 (quotation omitted).

Kaneakua alleges prejudice only from the anxiety and oppressiveness resulting from pretrial incarceration.  He makes no claim that the delay impaired his defense.  Anxiety due to pretrial incarceration is "unfortunate, but not a serious allegation of prejudice." *State v. Givens*, 356 N.W.2d 58, 62 (Minn. App. 1984) (citing *State v. Helenbolt*, 334 N.W.2d 400, 405-06 (Minn. 1983)), *rev. denied* (Minn. Jan. 2, 1985).

Moreover, Kaneakua was at fault for much of the time he was held in pretrial custody.  In addition to his three other pending felony cases in Hennepin County, he had an arrest and hold-without-bond warrant for violating the terms of his probation in an Anoka County case.  And while the district court authorized his release from custody in February 2022, Kaneakua was returned to custody in July 2022 because of his failure to appear for the June 2022 trial date.  We therefore give this factor little weight.

Based on our balancing of the *Barker* factors, we agree with the district court's conclusion that the delay in bringing this case to trial did not violate Kaneakua's constitutional right to a speedy trial.

**II.    The district court did not violate Kaneakua's right to be tried by an impartial tribunal.**

The right to be tried before an impartial tribunal is protected under the United States and Minnesota Constitutions. U.S. Const. amend. VI; Minn. Const. art. I, § 6; *see Rose v. Clark*, 478 U.S. 570, 577 (1986); *Greer v. State*, 673 N.W.2d 151, 155 (Minn. 2004). A right to an impartial judge applies at all stages of the proceedings. *State v. Schlienz*, 774 N.W.2d 361, 367 (Minn. 2009). And a judge violates a defendant's rights if a reasonable examiner would question the judge's impartiality. *State v. Hick*s, 837 N.W.2d 51, 59 (Minn. App. 2013), *aff'd*, 864 N.W.2d 153 (Minn. 2015). The violation of the right to an impartial judge constitutes a structural error, requiring reversal regardless of prejudice to the defendant. *See State v. Dorsey*, 701 N.W.2d 238, 253 (Minn. 2005) (concluding that being deprived of the right to an impartial tribunal was structural error requiring automatic reversal). We review such constitutional challenges de novo. *Id.* at 249 (citing *State v. Wicklund*, 589 N.W.2d 793, 797 (Minn. 1999)).

Kaneakua argues that the district court engaged in an independent investigation of facts outside the record and thereby demonstrated emergent bias in violation of his constitutional right to be tried before an impartial tribunal. Specifically, Kaneakua argues that it was structural error for the district court to consider information concerning the scheduling of his other pending criminal cases when ruling on the merits of Kaneakua's

9

motion to dismiss for a violation of his speedy-trial right (the dismissal motion).[3]  We disagree.

The supreme court has made clear that to maintain impartiality, "the trier of fact" must avoid "reaching conclusions based on evidence sought or obtained beyond those adduced in court." *Id.* at 249-50.  But that is not what occurred here.  First, the challenged information—Kaneakua's criminal history—was contained in the court file in *this* case.  The summary of his criminal history was filed with the court ten days before the district court issued its decision denying the dismissal motion.[4]  Second, the challenged information was not "evidence sought or obtained" outside the evidence adduced in court; it was, instead, only information concerning scheduling that was relevant to the district court's assessment of the merits of Kaneakua's motion to dismiss.  Third, this case was being "tagged" along with Kaneakua's other pending cases, and pretrial matters in this case were frequently heard contemporaneously with his other pending cases.  And, finally, at

---

[3] The cases referenced by the district court in its order that Kaneakua alleges are extra-record facts, include the following: Nos. 27-CR-21-15089 (three counts of fifth-degree gross-misdemeanor assault, one count of third-degree assault, and felony prohibited possession of tear gas), 27-CR-20-10114 (fourth-degree gross-misdemeanor assault and felony transit-obstruction count, sentenced in February), 27-CR-20-15589 (gross misdemeanor for giving a peace officer a false name, misdemeanor drug possession, and petty misdemeanor theft), 27-CR-19-30587 (fourth-degree gross-misdemeanor assault, fifth-degree misdemeanor assault, and misdemeanor disorderly conduct), 27-CR-22-10172 (misdemeanor theft), 27-CR-21-1714 (misdemeanor driving after license revocation), and 27-CR-22-6551 (two counts of fifth-degree misdemeanor assault and two misdemeanor traffic counts).  Case No. 27-CR-21-1179 (third-degree felony assault and two traffic counts) was dismissed.

[4] The competency evaluation of Kaneakua, completed in October 2021, months before the judge's denial of the dismissal motion, also listed all cases charged at that point.

least as to the case tried in January 2022, Kaneakua put that case in the record, himself, by mentioning it in his dismissal motion, and it was also referenced in the competency evaluation.

Kaneakua cites a recent nonprecedential opinion of this court in support of his argument, *State v. Blanshan*, No. A14-1065, 2015 WL 4507811, at *2 (Minn. App. July 27, 2015). But *Blanshan* is not binding authority and is distinguishable. In *Blanshan*, the district court obtained a copy of a court order from one of the defendant's previous convictions, inadvertently determined the order was part of the evidence presented at trial when it had never been submitted, then cited the order five times in finding the defendant guilty. 2015 WL 4507811, at *3; *see also Dorsey*, 701 N.W.2d at 243-44, 253 (holding that the district court demonstrated reversible bias by appearing to assist the state when the district court independently investigated the truthfulness of a defense witness's testimony and advised counsel of the results of its investigation before the close of evidence). The district court in *Blanshan* thus relied on facts from another case file as part of the evidence to determine the defendant's guilt. The district court engaged in no such conduct here.

We thus detect no improper bias arising out of the district court's reference to Kaneakua's other pending cases in its order denying his dismissal motion.

### III. The district court did not abuse its discretion in admitting the identification testimony of Kaneakua's probation officer.

Kaneakua alleges that the district court abused its discretion when it allowed his probation officer to testify, over Kaneakua's objection, that she recognized Kaneakua from photographs. The probation officer also identified Kaneakua in the courtroom. Neither

11

the probation officer's job position nor her assignment as Kaneakua's probation officer were disclosed during her testimony.

Kaneakua complains that the probation officer's testimony was improper opinion testimony by a lay witness that was not helpful to the jury. Under the rules of evidence, lay-witness testimony is limited to inferences "(a) rationally based on the perception of the witness; (b) helpful to a . . . determination of a fact in issue; and (c) not based on . . . specialized knowledge within the scope of Rule 702 [expert testimony]." Minn. R. Evid. 701.

We review evidentiary rulings for abuse of discretion. *State v. Booker*, 770 N.W.2d 161, 168 (Minn. App. 2009) (citing *State v. Goar*, 295 N.W.2d 633, 634 (Minn. 1980)), *rev. denied* (Minn. Oct. 20, 2009). The district court abuses its discretion when it bases its decision "on an erroneous view of the law or . . . against logic and the facts in the record." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (quotation omitted). But even if an evidentiary ruling constitutes an abuse of discretion, appellate courts will reverse a conviction only if the erroneous ruling prejudiced the defendant. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

We discern no error in admitting the testimony for two reasons. First, the bulk of the testimony merely provided background information concerning the investigation and the probation officer's role in narrowing the suspects to Kaneakua based on Kaneakua's distinctive tattoos. *See State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014) (noting that "evidence is generally admissible to give jurors the context for an investigation"). Second, the probation officer's identification of Kaneakua was based on the officer's personal

knowledge and familiarity with Kaneakua. As such, admission of the testimony was within the district court's discretion. *Compare State v. Post*, 512 N.W.2d 99, 101-02 (Minn. 1994) (holding it was error for the district court to exclude lay-witness testimony even on an ultimate issue), *with Pierson v. Edstrom*, 160 N.W.2d 563, 565-66 (Minn. 1968) (holding it was error for the district court to admit witness testimony regarding the speed of a vehicle as the witness was not present at the scene and such opinion evidence invaded the jury's province).

Kaneakua argues that, because the photographs were not blurry and Kaneakua had not altered his appearance between the time the photographs were taken and trial, the jury did not need the officer's help in identifying Kaneakua. He thus maintains that rule 701 was violated because the testimony was not "helpful to a . . . determination of a fact in issue." Minn. R. Evid. 701. We do not agree that just because the photographs clearly depicted Kaneakua that it was error to allow the testimony.

In addition, we are not persuaded that Kaneakua suffered prejudice as a result. Prejudice exists when there is a reasonable possibility the district court's erroneous evidentiary ruling significantly affected the verdict. *State v. Peltier*, 874 N.W.2d 792, 802 (Minn. 2016); *see also State v. Matthews*, 800 N.W.2d 629, 633 (Minn. 2011). The state in this case presented ample evidence —independent of the probation officer's testimony— to establish Kaneakua's identity, including the in-court identification of Kaneakua by one of the witnesses who testified that Kaneakua sprayed him with tear gas at the scene; a witness photo depicting Kaneakua's large bird-shaped arm tattoo compared with law enforcement photos of Kaneakua showing the same tattoo; and the 911 caller's statement

13

that the suspect had a tear drop tattoo on his face, a tattoo that the jury could readily observe at trial.  In the face of this evidence, we conclude that it is not likely that the jury's verdict would have been different without the probation officer's testimony.  Accordingly, even if the admission of the testimony was erroneous, it was harmless.

**Affirmed.**